**Martin L. NASH, Plaintiff,**

v.

**JACQUELINE COCHRAN, INC. and American Cyanamid Company, Defendants.**

**No. 81 Civ. 6157.**

United States District Court, S. D. New York.

Oct. 13, 1982.

---

Miller, Montgomery, Sogi & Brady, New York City, for plaintiff; Jeffrey W. Herrmann, John J. Quinn, George H. Schaeffer, New York City, of counsel.

Gold, Farrell & Marks, New York City, for defendants; Thomas R. Farrell, Jane G. Stevens, Robert P. Mulvey, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Plaintiff, a former sales employee of the defendant, Jacqueline Cochran, Inc. ("Cochran"), commenced this action against it and its parent, American Cyanamid Company ("Cyanamid") pursuant to the Age Discrimination in Employment Act[1] ("ADEA"). He charges that his termination was in violation of the Act and was the product of a conspiracy between the two defendants and their officers to discriminate against older employees. He alleges that in furtherance of the conspiracy Cochran and certain of its officers adopted a "program and course of action to discharge certain employees of Cochran, including [plaintiff], on the basis of their ages and regardless of the qualifications and previous performance of said employees." Plaintiff seeks compensatory damages, liquidated damages, an award of attorneys' fees and costs of the action.

The defendants, in addition to a denial of the material allegations of the complaint, assert that the plaintiff's discharge was based on a valid and necessary business judgment. Pretrial discovery has been completed. The defendants now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure upon the ground that there is no genuine issue as to any material fact and that they are entitled to judgment as a matter of law. A review of the record indicates that as to the essential facts there appears to be no issue, but plaintiff contends that the inferences to be drawn from the facts require a trial.

Plaintiff, a company sales representative, was discharged by Cochran on December 4, 1980, when he was fifty-eight years of age. He had worked for Cochran for two years and for Shulton, Inc., another Cyanamid subsidiary, for the previous twenty-three years.

Cochran originally was engaged in the distribution of specialty cosmetics and fragrance products of a luxury type sold principally in department stores. Shulton also sold cosmetics and fragrance products, but these were lower priced, had a greater mass appeal and were distributed principally through chain drug stores and mass volume retailers. After a number of inter-company changes in and about January 1980, the sales forces of the two companies were merged in an effort to improve territory coverage, consolidate in one organization all fragrance brands sold to department stores and provide an organizational structure capable of accelerated growth and handling new product lines.

In late 1980, because of adverse economic and competitive pressures, Cochran developed plans for increasing efficiency and decreasing costs of sales operations. An overall reduction of the sales personnel was indicated. After consultations among top level marketing and sales executives, it was determined that certain sales territories would be eliminated and others consolidated. These required the termination of the services of some eight or nine employees. The internal structuring or reorganization was decided upon without consideration of the identities of the sales representatives who would be affected by the implementation of the plan. The plan finally decided

---

1. 29 U.S.C. § 623.

upon was to establish ten sales areas out of the existing twelve; thus, two were to be dissolved and consolidated into others. Eight sales employees were to be terminated under the reorganization: seven sales representatives and one area manager.

The decision as to how to implement the consolidations was left to the regional managers. They determined that the North and South Carolina regions were to be consolidated. Plaintiff operated in the South Carolina region. Ms. Shelby Hudson, a twenty-nine year old sales representative, operated in the North Carolina region. The issue was whether to eliminate the territory handled by plaintiff in South Carolina or that handled by Ms. Hudson in North Carolina, and who was to be terminated. The regional manager determined that the most productive, efficient and economical alternative was to discharge plaintiff and to consolidate his area with North Carolina. The plaintiff was acknowledged to be a competent sales representative, but the regional manager was of the view that Ms. Hudson was a more conscientious employee with greater overall capacity. In addition, she resided in Charlotte, North Carolina, where the account which represented over fifty per cent of plaintiff's sales volume was located and it could readily be handled by Ms. Hudson. The regional manager was also of the view that if Ms. Hudson were eliminated and plaintiff retained, it would have required the relocation of plaintiff from South Carolina to North Carolina at an estimated cost to Cochran of $45,000.

Plaintiff does not challenge defendants' decision to reorganize or to consolidate the South Carolina area with the North Carolina area. He does challenge the decision to terminate him as opposed to Ms. Hudson, who is not within the protected age group and with less service with Cochran. That is the basis of his charge of age discrimination—in short, he contends he should have been given the position and not Ms. Hudson, and that the failure to do so reflects age discrimination.

Plaintiff presses that the summary judgment rule forecloses granting defendants' motion because what is involved in deciding the issue of discrimination is motivation and intent, which can only be determined from all the facts and surrounding circumstances. However, the rule would be rendered sterile if by the mere assertion of such a claim, summary judgment where otherwise justified could be defeated. The salutary purposes of the rule to avoid long, expensive and harassing trials apply no less to discrimination cases than to commercial or other areas of litigation. While it is recognized summary procedures should be sparingly applied where intent and state of mind are significant,[2] this "does not mean that a party against whom summary judgment is sought is entitled to a trial simply because he has asserted a cause of action to which state of mind is a material element. There must be some indication that he can produce evidence to enable him to reach the jury with his claims."[3] Fully mindful that the summary judgment rule is rigidly enforced in this Circuit so as not to deprive a litigant of his right to a trial whenever a genuine issue of fact exists, this Court is persuaded that the defendant is entitled to summary judgment. While "trial by affidavits represents an unjustified diminution

2. *Poller v. Columbia Broadcasting Systems, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962).

3. *Hahn v. Sargent,* 523 F.2d 461, 468 (1st Cir. 1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). *See Washington Post Co. v. Keogh,* 365 F.2d 965 (D.C.Cir.1966), *cert. denied,* 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967) (summary judgment in a libel action was granted in favor of defendant despite plaintiff's claim he was entitled to have a jury determine malice based upon a permissible inference because the alleged libels were published with reckless disregard for their truth or falsity). *See also First Nat'l Bank v. Cities Service,* 391 U.S. 253, 278–88, 88 S.Ct. 1575, 1587, 20 L.Ed.2d 569 (1968); *White v. Hearst Corp.,* 669 F.2d 14, 17 (1st Cir. 1982); *Dolese v. United States,* 605 F.2d 1146, 1154–55 (10th Cir. 1979), *cert. denied,* 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980); *Perma Research & Dev. Corp. v. Singer Co.,* 410 F.2d 572, 580 (2d Cir. 1969); *Radio City Music Hall Corp. v. United States,* 135 F.2d 715, 718 (2d Cir. 1943) (L. Hand, J.).

of the rights of plaintiffs, neither courts nor defendants should be subjected to trials which can be little more than harassment." [4]

There can be no question that the defendant was engaged in the restructuring of its sales and marketing procedures for the purpose of effecting economies, increasing efficiency and obtaining additional income and it was within management's determination to consolidate the South Carolina and North Carolina sales territories in order to effectuate that purpose. The ultimate issue is whether the discharge of plaintiff and the retention of Ms. Hudson in carrying out that plan was motivated by discrimination against plaintiff because of his age.

 The ADEA prohibits an employer from discharging an age-protected employee because of his age, but permits his discharge based on reasonable factors other than age or for good cause.[5] The ultimate burden of proof upon the entire case rests upon the plaintiff to sustain by the preponderance of evidence his claim that he was discharged because of illegal age discrimination.[6] The employer is not required to prove that there was a justifiable cause for the employee's discharge.[7] Plaintiff's initial burden is to offer evidence "adequate to create an inference that an employment decision was based on a discrimination criterion illegal under the Act."[8] The method used to establish a set of circumstances which permit an inference of discrimination in *Title VII* discrimination cases has been applied by our Court of Appeals in *age* discrimination cases.[9] Applying that calculus to the instant case, plaintiff establishes his prima facie case by proof of these elements: (1) that he was within the protected age group; (2) that he was qualified for the position at the time of his discharge; (3) that he was not appointed to the position but discharged; and (4) that one outside the protected age group was appointed. It is not disputed that plaintiff has met his burden as to these elements.

 Thus the defendants were called upon to establish that some valid, legitimate reason other than age discrimination accounted for plaintiff's non-appointment and discharge.[10] In response, the defendants have established that the elimination of eight positions, including that held by

---

**4.** *Applegate v. Top Associates, Inc.,* 425 F.2d 92, 96 (2d Cir. 1970).

**5.** 29 U.S.C. §§ 623(a), 623(f)(1, 3).

**6.** *See Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981).

**7.** *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); *Parcinski v. Outlet Co.,* 673 F.2d 34, 36 (2d Cir. 1982); *Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914, 921 (2d Cir. 1981).

**8.** *International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 1866, 52 L.Ed.2d 396 (1977) (construing Title VII, 42 U.S.C. § 2000–e et seq.).

**9.** *See Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914, 919–20 (2d Cir. 1981), relying upon the order and allocation of proof in a Title VII disparate treatment employment discrimination case in the hiring context as set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973), and subsequently reaffirmed in *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–54, 101 S.Ct. 1089, 1093, 67

L.Ed.2d 207 (1981). *See also Parcinski v. Outlet Co.,* 673 F.2d 34, 36 (1982).

It should be noted that the elements of a prima facie ADEA case under the cited cases in our circuit appear to differ from that of other circuits. In the Fifth and Sixth Circuits, for example, part of the plaintiff's initial burden is the introduction of evidence, "circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate in reaching the decision at issue." *Williams v. General Motors Corp.,* 656 F.2d 120, 129 (5th Cir. 1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982). *See also Baldwin v. Sears, Roebuck & Co.,* 667 F.2d 458, 461–62 (5th Cir. 1982); *Ackerman v. Diamond Shamrock Corp.,* 670 F.2d 66, 70 (6th Cir. 1982).

**10.** *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *Board of Trustees of Keene State College v. Sweeney,* 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); *Furnco Construction Co. v. Waters,* 438 U.S. 567, 578, 98 S.Ct. 2943, 2950, 57 L.Ed.2d 957 (1978); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973).

plaintiff, was the result of a consolidation of sales areas to effectuate a plan to increase efficiency, reduce expenses and increase income. This was a business judgment by the defendants. Indeed, the plaintiff, when questioned as to his belief for the reason for his termination, stated: "It was simply a business judgment on their part, I suppose." [11]

Here the defendants abundantly "articulated [a] legitimate, nondiscriminatory reason" [12] for plaintiff's termination. Thus, the plaintiff must prove by a fair preponderance of the evidence that the reason for his discharge was other than that assigned by his employer; that the assigned reason was only a pretext for discrimination—that in fact his discharge and non-appointment to the North Carolina job was because of intentional age discrimination against him. Plaintiff has offered no proof, direct or circumstantial, to sustain this burden. Admittedly, there is no direct or "smoking gun" evidence, such as a writing or memorandum, indicating a discriminatory motive for the discharge or a general policy as to elderly employees.[13] No evidence has been tendered that plaintiff or any other employee was informed by management that he was discharged because of his age; nor is there any evidence that any responsible company official stated a preference to retain younger employees in effecting the eliminations that were required under the reorganization.[14] Indeed, plaintiff testified that he never heard any responsible executive of the defendants say they were going to fire older employees.[15] Also, there is no statistical proof of a pattern or policy of forced retirement of elderly persons to permit an inference of age discrimination.[16]

Perhaps recognizing the force of the defendants' proof, plaintiff argues a trial should be had so that a jury, based upon the totality of the evidence, may decide the state of mind of the defendants with respect to his discharge—whether in fact the business decision was the real reason or only a pretext and that the real reason was illegal age discrimination. One may readily accept the general proposition that intent is usually established by a consideration of all the attendant circumstances of a given situation and the reasonable inferences to be drawn therefrom. But there must be some basic evidentiary fact to permit the trier of the fact to draw a reasonable and permissible inference of intent to discriminate. No such fact has been offered despite extensive pretrial discovery. Plaintiff has had full discovery by way of depositions of defendants' officials, answers to interrogatories and document production covering a five-year period. The scope of discovery included information designed to support, if it did exist, a pattern or practice of age discrimination, as well as confidential statistical data running into hundreds of pages. Despite such evidence, extending over a five-year period, plaintiff has failed to point to a scintilla of evidence that would warrant such an inference. Other than plaintiffs' expressed desire again to question defendants' executives upon a trial to probe their intent and motivation, he has not suggested what additional evidence could be unearthed upon a trial to permit a rational inference that but for his age he would not have been discharged.[17]

Plaintiff himself has submitted no affidavit in opposition to this motion. His law-

11. Deposition of Martin Nash at 24 (July 9, 1982).

12. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1981)); *see* note 10 *supra.*

13. *Williams v. General Motors Corp.,* 656 F.2d 120, 130 (5th Cir. 1981).

14. *Cf. Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914, 921 (2d Cir. 1981).

15. Deposition of Martin Nash at 49–51 (July 9, 1982).

16. *Cf. International Brotherhood of Teamsters v. United States,* 431 U.S. 324, 337–40, 97 S.Ct. 1843, 1855, 52 L.Ed.2d 396 (1977); *Stanojev v. Ebasco Services, Inc.,* 643 F.2d 914, 921 (2d Cir. 1981).

17. *Geller v. Markham,* 635 F.2d 1027, 1035 (2d Cir. 1980), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981); *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1019 (1st Cir. 1979).

yer, however, argues that since the bulk of the newly created area in North Carolina encompassed in large measure the sales volume of plaintiff's prior assignment and that he was more experienced than his replacement, from this and other evidence (which is not stated) the "so-called sound business or economic policy relied on by defendants would call for retention of plaintiff as one familiar with the territory and a known quantity."[18] But this argument by counsel simply questions the business judgment and policy decision of the defendants.[19] It does not logically permit a quantum leap to an inference that plaintiff's discharge was due to age discrimination. It would permit a trier of the fact to second guess management's decision. ADEA does not authorize such business judgment review.

As noted, plaintiff has submitted no affidavit in opposition to this motion. Under the summary judgment rule he may not rest upon mere denial of the defendants' evidence, but "must set forth specific facts showing that there is a genuine issue for trial." This he has failed to do. In short, were the case tried to a jury, there are no facts in the instant record that would permit a fair inference to be drawn that plaintiff's discharge was based on age discrimination and not because of a restructuring of the sales organization of defendants for reasons of economy or efficiency. The fact is that of eight persons who were terminated by reason of the reorganization, six were under forty years of age and thus not in the protected age group. Moreover, none of these individuals was given alternative positions within the company. The fact that plaintiff states he was prepared to move from South Carolina to North Carolina does not establish discrimination any more than

his challenge to defendants' estimate of the expense of removal of him from South Carolina to North Carolina as a factor in their decision to give the position to Ms. Hudson, who already was located there, thereby eliminating that expense. Absent proof of a prohibited cause for plaintiff's discharge, the defendants were under no duty to discharge Ms. Hudson and give the open place to plaintiff. Plaintiff has offered no fact to even suggest that Ms. Hudson was not fully competent to service the new sales area. The decision to give the position to a younger employee already located at North Carolina who management believed was more competent and at the same time would eliminate the expense of relocation was a matter of judgment and does not establish age discrimination. All that plaintiff has established is that he was within the protected age group, whereas Ms. Hudson is not. This is insufficient to establish his claim.[20] To allow this case to go to the jury would permit a determination be made on the basis of guess or speculation. Indeed, were a jury to return a verdict in favor of plaintiff, the Court would be constrained to grant judgment n.o.v.[21]

The ADEA "does not authorize the courts to judge the wisdom of a corporation's decision," nor "does it require an employer to accord special treatment" to the age protected group. It does require that "any employee's age be treated in a neutral fashion, neither facilitating nor hindering advancement, demotion or discharge."[22] Here the evidence sustains a finding that plaintiff, when the work force was reduced, was discharged for reasons unrelated to his age.

---

18. Affidavit in Opposition to Defendants' Motion for Summary Judgment at 11.

19. See Parcinski v. Outlet Co., 673 F.2d 34, 37 (2d Cir. 1982); Kephart v. Institute of Gas Technology, 630 F.2d 1217, 1223 (7th Cir. 1980); Havelick v. Julius Wile Sons & Co., 445 F.Supp. 919, 926 (S.D.N.Y. 1978).

20. Sahadi v. Reynolds Chemical, Inc., 636 F.2d 1116, 1117 (6th Cir. 1980); Laugesen v. Anaconda Co., 510 F.2d 307 (6th Cir. 1975).

21. See Parcinski v. Outlet Co., 673 F.2d 34, 36–37 (2d Cir. 1982); Stanojev v. Ebasco Services, Inc., 643 F.2d 914, 924 (2d Cir. 1981); Williams v. General Motors Corp., 656 F.2d 120, 130–31 (5th Cir. 1981).

22. Parcinski v. Outlet Co., 673 F.2d 34, 37 (2d Cir. 1982); see also Williams v. General Motors Corp., 656 F.2d 120, 129 (5th Cir. 1981).

As to plaintiff's additional claim of conspiracy, the record is utterly barren of any evidentiary fact that gives the slightest support to the charge. It appears to have been included in the complaint as a make-weight. Not a single conspiratorial act is attributed to any alleged conspirator.

The defendants' motion for summary judgment is granted.

So ordered.